[No. 6530–1.   Division One.   September 24, 1979.]

*In the Matter of the Welfare of*
JODI FELDMAN.

*Slade Gorton, Attorney General,* and *Donald Foss, Jr., Assistant,* for appellant.

*Donald J. Horowitz,* for respondents.

DORE, J.—The Department of Social and Health Services, hereinafter designated DSHS, appeals a juvenile court order to pay certain medical bills incurred by a dependent child in its custody.

## ISSUE

Did the juvenile court have jurisdiction and statutory and/or equitable grounds to require DSHS to pay the child's medical bills?

## FACTS

Jodi Feldman was declared a dependent child and placed in the temporary custody of DSHS on May 17, 1976. DSHS arranged for placement of the child in an appropriate facility but failed to follow its customary procedure of immediately assigning a caseworker, and one was not assigned for over a year because the file was misplaced. During that year, Jodi's parents made numerous unsuccessful attempts to obtain DSHS assistance with treatment and finances.

Between May 17, 1976, and the date of trial, Jodi was either hospitalized or receiving outpatient treatment while residing in her parents' home. Throughout this period, she remained a dependent ward of the State in the legal custody of DSHS. On October 25, 1977, the juvenile court relieved the parents of financial responsibility for future treatment of Jodi because they had exhausted their financial resources. There was no appeal taken from such order.

The parents then sought a hearing to examine their ability to pay bills already incurred while Jodi was in the temporary custody of DSHS. The trial court again found that the parents had depleted their resources while caring for Jodi. The court also found that their liabilities, even without the unpaid medical bills, exceeded their assets. The court ordered DSHS to pay all of the unpaid bills but denied the Feldmans' request for reimbursement for bills the parents had previously paid.

DECISION

■ The primary obligation to support a dependent child in the custody of DSHS is on the parents, not the taxpayers. *State v. Wood,* 89 Wn.2d 97, 569 P.2d 1148 (1977); *State v. Booth,* 15 Wn. App. 804, 551 P.2d 1403 (1976); RCW 74.20.010; RCW 74.20A.010. The financial hearing in this case was held under former RCW 13.04.100[1] which authorized the court to determine the parents' ability to pay and issue enforceable support decrees to the parents. It did not authorize the issuance of support orders directed to the DSHS.

■■ An earlier version of RCW 13.04.100,[2] amended by Laws of 1969, 1st Ex. Sess., ch. 138, § 1, did authorize the trial court to order a public agency to support the child under certain circumstances. A material change in the language of a statute is presumed to indicate a change in the law. *Allen v. Employment Security Dep't,* 83 Wn.2d 145, 516 P.2d 1032 (1973). From the plain language of the statute and the legislative history noted above, we conclude that the trial court had no authority under the version of RCW 13.04.100 in effect throughout the child's dependency to order DSHS to pay the child's medical bills.

---

[1] "An order of commitment may be temporary or permanent in the discretion of the court, and may be revoked or modified as the circumstances of the case may thereafter require. In any case in which the court shall find the child dependent or delinquent, it may in the same or subsequent proceeding upon the parent or parents, guardian, or other person having custody of said child, being duly summoned or voluntarily appearing, proceed to inquire into the ability of such persons or person to support the child or contribute to its support, and if the court shall find such person or persons able to support the child or contribute thereto, the court may enter such order or decree as shall be according to equity in the premises, and may enforce the same by execution, or in any way in which a court of equity may enforce its decrees."

[2] The relevant portion stated: "In event such child is ordered committed other than to the department of institutions, or the department of public assistance, the court may further order that the department of public assistance support, or contribute to the support of the child to the extent that the total of such support will not exceed the rate per month as from time to time may be fixed by said department for other children in similar foster care."

The trial court based its decision under former RCW 74.13.031. However, that statute only authorized the department to purchase care for children. It neither required the department to purchase care nor did it authorize the juvenile courts to order the department to pay for the care of children.

We also reject the Feldmans' argument that the State was equitably estopped by its own mistakes from challenging the court order. *West v. Department of Social & Health Servs.,* 21 Wn. App. 577, 586 P.2d 516 (1978). Unlike *West,* the record contains no evidence of detrimental reliance by the Feldmans. Quite the contrary, they never had any reason to believe DSHS would pay for their daughter's treatment.

We reverse, predicated upon the trial court's lack of a statutory or equitable basis to order DSHS to pay for the child's care. We do not address the question of creditors' rights against these parties.

Reversed.

SWANSON, A.C.J., and FARRIS, J., concur.

Reconsideration denied December 19, 1979.

Review granted by Supreme Court March 7, 1980.