[No. 46782. En Banc. August 28, 1980.]

*In the Matter of the Welfare of*
JODI FELDMAN.

*Levinson, Friedman, Vhugen, Duggan, Bland & Horowitz,* by *Donald J. Horowitz,* for petitioner.

*Slade Gorton, Attorney General,* and *Donald Foss, Jr., Assistant,* for respondent.

ROSELLINI, J.—This proceeding was brought in Superior Court by parents of a dependent child. They sought an adjudication that the Department of Social and Health Services (Department) should pay all or a portion of the medical bills which they incurred on behalf of the child during a period of time when she had been in the legal custody of the Department.

In May 1976, the Department had petitioned the court to declare Jodi Feldman a dependent child, under RCW 13.04.010(2), Laws of 1961, ch. 302, § 1,[1] because she was evidencing need of medical treatment. The order was issued and legal custody of the child was declared to be in the Department. Jodi was suffering from mental illness and was in Fairfax Hospital at the time. The court approved her treatment at that hospital.

Although the Department also approved this program, it took no active part in it, and in fact assigned no caseworker to look into the welfare of the dependent. Her file was misplaced or overlooked for about a year, during which time she continued to receive medical treatment. Her parents made several unsuccessful attempts to contact the appropriate persons in the Department to obtain assistance with her problems, as well as financial assistance. In June 1977, the court entered a further order, continuing the child in legal custody of the Department but changing the authorized hospital from Fairfax to Overlake. At that time a caseworker was assigned, but the Department did not assume responsibility for the treatment of the child. Rather, it acquiesced in the program being followed by the parents.

In October 1977, the juvenile court, after a financial hearing, entered an order finding that the parents had exhausted their financial resources in providing treatment for Jodi and ordering the Department to provide treatment for its ward. There was no appeal from that order.

---

[1]That section was repealed, Laws of 1977, 1st Ex. Sess., ch. 291, § 81. Dependency is now defined in RCW 13.34.030. Provisions for adjudication of dependency and disposition of dependent children are found in RCW 13.34.

On December 21, 1977, a further financial hearing was held. The unchallenged findings show that the medical expenses of the child had exceeded $43,000, that $31,000 of this had been paid by the parents' insurance carrier, and that they themselves had paid about $2,000. A part of one bill had been forgiven by one of the hospitals. The father earned between $10,000 and $15,000 per year and the mother was unemployed. The family's assets did not equal its obligations. The court concluded that it would be proper and reasonable for the Department to pay the balance owing, and issued a decree accordingly. The unpaid balance was $9,652.

A significant unchallenged finding was that

> The usual and customary practice of the Department of Social and Health Services in such circumstances is to assign a caseworker to the child and to formulate a treatment plan. . .
>
> . . .
>
> . . . and thereafter bill the parents for such sums as the Department feels the parents can pay consistent with their financial circumstances.

The issue before us is: Do the courts of this state have authority to order the Department of Social and Health Services to pay medical expenses which have been incurred by a child who has been declared dependent upon the Department's petition, alleging that the child evidences need of medical treatment?

■ The question is one of statutory interpretation, and the Court of Appeals so treated it. The present statute, RCW 13.34.160, providing for financial responsibility of parents where a child is declared dependent, is a recodification of the one in effect at the time of the events involved here. It provides:

> In any case in which the court shall find the child dependent, it may in the same or subsequent proceeding upon the parent or parents, guardian, or other person having custody of said child, being duly summoned or voluntarily appearing, proceed to inquire into the ability

of such persons or person to support the child or contribute to its support, and if the court shall find such person or persons able to support the child or contribute thereto, the court may enter such order or decree as shall be according to equity in the premises, and may enforce the same by execution, or in any way in which a court of equity may enforce its decrees: [Irrelevant proviso omitted.]

RCW 13.34.170 provides for enforcement of the judgment against such parents.

It is obviously assumed in this statute that someone other than the parents will support the child, in whole or in part, during its dependency if the parents are unable to do so.

Formerly, the support of dependent children whose parents were unable to support them was, by statute, the responsibility of the county. Laws of 1913, ch. 160, § 8 contained the same language as RCW 13.34.160 with respect to the inquiry into the ability of the parents to pay and the enforcement of the support decree by execution or equitable means.

Through a series of statutory amendments, the responsibility of caring for dependent children was transferred from the county to the various agencies of the state, including the Department of Social and Health Services, where it now rests. *See* Laws of 1959, ch. 26, § 74.12.130; Laws of 1961, ch. 302, §§ 6–7; Laws of 1965, ch. 30, §§ 4–5; Laws of 1967, ch. 137, § 1; Laws of 1969, 1st Ex. Sess., ch. 138, § 1; Laws of 1975, 2d Ex. Sess., ch. 71, § 2; Laws of 1977, 1st Ex. Sess., ch. 291, effective July 1, 1978, and Laws of 1979, ch. 155.

Laws of 1961, ch. 302, § 7, authorizing the court to enter an order of financial support, contained the following provision:

In any case where it appears that the parents, guardian, or other person having custody of the child is unable to support the child, or contribute to his support, the court shall give notice of such fact to the department of public assistance, and in all such cases the department shall be

given an opportunity to appear and be heard. In event such child is ordered committed other than to the department of institutions, or the department of public assistance, the court may further order that the department of public assistance support, or contribute to the support of the child to the extent that the total of such support will not exceed the rate per month as from time to time may be fixed by said department for other children in similar foster care. If, under emergency circumstances, immediate placement in foster care is necessary, or desirable for the welfare of the child, the court may place a child directly with a foster parent or parents in a foster home not then having a certificate as such, and in such case the court shall notify the department of public assistance of such placement.

The department of public assistance shall promptly evaluate the home in relation to the needs of the child, report its findings to the court and keep the court informed of the progress of the child. In the event of such emergency placement, the department of public assistance shall pay for such foster care from the time of placement. Such foster care may be provided for a child who is, by order, under the supervision of a probation officer.

Whenever a child is committed to the department of public assistance, the department shall report to the court, from time to time as the court may require, as to the financial condition of the parent or guardian: *Provided,* That no order for the payment by the department of public assistance of all or part of the expense of support and maintenance of a dependent or delinquent child shall be effective for more than six months, unless a new order is secured at the expiration of that period.

In 1969, at the request of the Department, the legislature amended that section, deleting this language. Laws of 1969, 1st Ex. Sess., ch. 138, § 1.

While the court continued to control the disposition of dependent children through these statutory changes, responsibility for their care was transferred from the county to the state. The state agencies were given increasing authority in this area, and it was eventually made the

duty of the Department of Public Assistance to care for dependent children.

Under the present law pertaining to child welfare, the Department of Social and Health Services, which succeeded to the powers and duties of the Department of Public Assistance, has the function of providing services for this purpose. Under RCW 74.13.020 and .031, it has the duty of protecting and caring for dependent children. RCW 74.13-.031(3) requires it to investigate complaints of neglect, abuse, or abandonment of children and to offer services in relation to the problem and/or bring the problem to the attention of the court. In subsection (8) the Department is authorized to purchase care for dependent children.

It is the position of the Department that it is within its sole discretion to decide whether it will pay for a child's care in any given case. It points to the fact that, where the court once had express authority to order its predecessor to pay for necessary support, that portion of the statute has been excised. Therefore, it maintains, the legislature has expressed its intent that the court can no longer order the Department to contribute to the support of a dependent child.

Prior to 1961, the provision in question fixed the obligation for support of dependent children to the extent their parents were unable to provide it, upon the county, rather than the state. In 1961 the legislature transferred the obligation to a state agency, the Department of Public Assistance, except when the child was placed in the custody of the Department of Institutions. After the passage of Laws of 1965, ch. 30, this care of dependent children was made the responsibility of the Department of Public Assistance. RCW 74.13.020, .031.

The 1969 amendment which deleted any reference to the agency responsible for payment of support in dependency cases, where the parents are unable to pay, was passed by the legislature upon departmental request. We find in the journals no clue to the reasons for its adoption. It passed both houses with virtually no opposition. It is reasonable to

assume that the legislature was convinced that these provisions were no longer necessary, the Department having been given the duty, the authority, and the means to see to the welfare of dependent children. When viewed in conjunction with other statutes upon the subject, it obviously was not intended to relieve the Department of its duties with respect to dependent children.

The Department readily acknowledges that it routinely makes arrangements to share the expense of providing needed medical care for dependent children. However, in this instance, it refuses to take any responsibility for payment for a course of treatment which it approved and for which it solicited the court's approval. The Department does not dispute that had its usual procedure been followed, provision would have been made for a sharing of the costs. Nevertheless, it insists that it can arbitrarily refuse to pay any portion of the costs which were incurred pursuant to an order for which the Department itself petitioned the court.

We read the statutes differently. RCW 13.34.160 gives the court the authority to determine what portion of a dependent child's support should be paid for by the parents. When that is determined, it follows that the public is obligated to pay the remainder. Under the statutes cited the legislature has reposed the obligation to care for dependent children in the Department of Social and Health Services. There is admittedly no other governmental unit or agency receiving legislative appropriations for that purpose and charged with the duty of providing such care. Implicit in all of the relevant statutes is a legislative intent that the state shall be responsible for the welfare of children in its custody.

It is true that parents bear the primary responsibility for the support of their children. *State v. Wood,* 89 Wn.2d 97, 569 P.2d 1148 (1977). Here, the parents have carried that responsibility until their resources are exhausted. In such cases the legislature has recognized that

the needs of the child should be attended to by the state, when its agents have found it to be dependent.

We need not decide here how broad is the discretion vested in the Department in regard to the care and disposition of dependent children. Suffice it to say that when the Department has petitioned for and secured a declaration of dependency and the court's approval of a particular plan of treatment, it is obliged to pay for the expenses incurred in carrying out that plan, to the extent that the parents, according to the court's finding, are unable to do so.

The decision of the Court of Appeals is reversed (*In re Feldman*, 24 Wn. App. 335, 601 P.2d 948 (1979)), and the judgment of the juvenile court is reinstated.

UTTER, C.J., and STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.